Ranney, J.
The plaintiff in error was appointed administrator of the estate of Margaret McLaughlin, as early as April, 1843. A final account was filed in the probate court, in 1852; which, after being referred to, and reported upon, by a master, was settled by the court in September of that year. The principal exception taken to the account, related to a release of all the interest of the defendant in error in the estate of Margaret McLaughlin, dated on the 8th of November, 1844; which the administator presented as a voucher, and claimed to be credited with the payment of the share of the defendant, in the estate. At the time it was executed, the plaintiff in error was also the ^administrator upon the estate of Catharine McLaughlin; from which, in 1847, he received as the administrator of Margaret over four thousand dollars.
It was claimed that a note at the foot of this release, stating that the paper had “ no ” reference to the estate of Catharine McLaughlin had been fraudulently altered, so as to make it read that the release had “ a ” reference to that estate. The master did not determine this question; but being of opinion that the release was not, within the meaning of the statute, a proper voucher for the payment of the share of James McLaughlin as an heir to the estate, he disallowed it, and found due to said James the sum of $1,011. This report was approved and confirmed by the court, and the administrator was ordered to distribute and pay over that amount according to law.
About one year thereafter, the said James filed in the probate *511 court an original petition, setting up the amount found due him, and the order of distribution; averring the alteration of the release, and praying for a judgment for the amount with interest, less the sum actually received by him when the release was executed. The administrator answered the petition, denying the- alteration of the release; and this issue being submitted to a jury, a verdict was returned finding the release altered as charged in the petition,, and assessing the damages of the petitioner at $838.56, upon which the court rendered a judgment for that amount. This petition is filed to reverse that judgment; and the error assigned is, that the court had no jurisdiction to entertain this last proceeding.
The question depends upon the act of March 14,1853, “ defining the jurisdiction and regulating the practice of probate courts.” 51 Ohio Stat. 167. By section 2 of that act it is provided that the probate court shall 'have exclusive jurisdiction “ to enforce the payment of the debts and legacies of deceased persons, and the distribution of the estates of intestates.”
This is the only provision of the act, having any relation to this *case, conferring jurisdiction upon that court. Its language is too explicit to admit of doubt as to what was intended. The legislature manifestly intended to invest the court with authority to compel executors and administrators to pay over to the persons entitled the proceeds of all the property which might come into their hands to be administered, whether such persons might be creditors, legatees, or distributees. Creditors have the first lien upon the fund; and when their claims were ascertained and liquidated by allowance, judgment, or award, it became the duty of the court to compel an application of the assets to their satisfaction. When these were paid, whatever might remain would belong to legatees or distributees ; and the same full authority was given to enforce the payment of their claims upon the estate. The act did not extend so far as to permit the executor or administrator to sue in that court for a debt due to the estate, or to subject him to be sued there for a debt disputed by him; but when the funds were in his hands, and the creditors were ascertained, and their debts liquidated, it conferred full power upon the court to compel him to do his whole duty in disbursing the fund, as well to legatees and distributees as to creditors.
These powers may have been injudiciously large; and the inference is very strong that they were thought to be by the legislature, *512 from the fact that the section was repealed by the amendatory act of May 1,1854, and re-enacted with no other change than that of substituting for the clause above quoted, the power “ to order the distribution of estates.”
This case does not call for a construction of the amendatory act, but the conclusion is irresistible, that some change was intended; and as the specific power to enforce the payment of debts, legacies, and distributive shares is omitted, it may not unreasonably be supposed that, in the opinion of the general assembly, the determination of the difficult questions of law and fact often involved in the settlement of the rights of legatees and distributees, ought not longer to remain with that court; and that the *order of distribution here referred to, should be a general direction to the administrator or executor to disburse the amount remaining in his hands, after a final settlement of his account, and to be used as a foundation for his liability, when sued elsewhere, rather than a specific ascertainment of the amount due to each legatee or distributee, and its enforcement by execution. ' But however this may be, we can not doubt that these powers were conferred by the act of 1853; and we know of no constitutional objection to the act in this particular.
Whether these powei’s fell within the specific description of probate jurisdiction, as defined by section 8, of article 4, of the constitution, or not, is wholly immaterial; as the same section authorizes that court to exercise “ such other jurisdiction as may be provided by law.” That act provided all the necessary means for the full and efficient exercise of this jurisdiction. By section 28, the judge was empowered to determine every disputed question of fact which it might be necessary to settle before making the necessary order, or, in his discretion, to cause the same to be determined by a jury, or referred; while section 15 provides for enforcing all his orders for the payment of money by execution, “ in the same manner as judgments in the courts of common pleas.”
We are therefore brought to the conclusion, that the court had jurisdiction, not only to settle the accounts of executors and administrators, but also to determine the amount due to each legatee or distributee, and to order the payment thereof; and — without undertaking to determine whether such order would, in every respect, be conclusive — that it had so far the force and effect of a judgment, that it might be enforced by execution. But the powers of the *513, 514 court were exhausted when the order of distribution was made, and it had no jurisdiction to entertain an original petition, brought to enforce the collection of the amount awarded to the distributee, as a debt against the administrator. The power to make the original order, was derived from the ^jurisdiction already acquired over the administrator, for the purpose of settling the estate, and from the authority given to compel a full settlement, by enforcing the payment of all the moneys that had come to his hands. When the order was made, the distributee had his election — to enforce it by execution or to treat it as a debt of record against the administrator, and sue for and collect it under another proceeding. But the probate court had no power to entertain such a proceeding. Its jurisdiction over the administrator having terminated when the final order was made, it had no jurisdiction to call upon him again to answer in that court. It erred in attempting it, and for that cause its judgment must be reversed.